FILED

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

2014 MAR 21 P 12: 51

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| **BANCROFT LIFE & CASUALTY ICC, LTD.,** | : |
| **Plaintiff,** | : |
| **v.** | : |
| **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,** | : |
| **Defendant.** | : |

CASE NO. 1:14CV

TSE/TRJ

## COMPLAINT

Now comes the Plaintiff, Bancroft Life & Casualty ICC, Ltd. ["Bancroft"], and for its Complaint against Defendant, National Union Fire Insurance Company of Pittsburgh, PA. ["National Union" or "Defendant"], states as follows:

### I.   THE PARTIES

1.   Bancroft is a licensed insurance company domiciled in Saint Lucia.  Bancroft provides special business income and risk insurance to companies, and has provided such coverage to companies based in the Commonwealth of Virginia, under a group master policy issued to an offshore special purpose entity.

2.   Upon information and belief, National Union Fire Insurance Company of Pittsburgh, PA. is a corporation which is duly organized and existing under the laws of the State of Pennsylvania with its principal place of business at 175 Water Street, New York, New York 10038.

## II.    JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). There is complete diversity of citizenship between Bancroft, on the one hand, and National Union, on the other hand.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.  An actual controversy, *inter alia*, exists between the parties within the meaning of 28 U.S.C. §2201.

4.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

5.    This Court has personal jurisdiction over National Union, as National Union regularly transacts business in the Commonwealth of Virginia and is registered with the Commonwealth's Bureau of Insurance as a property and casualty insurer.  In addition, this Court has personal jurisdiction over National Union pursuant to Virginia Code § 8.01-328.1 because the lawsuit from which Bancroft's claims arise was filed and litigated in this district and National Union, through counsel, participated in a mediation session presided over by Magistrate Judge Ivan Davis in the Alexandria Division of this district during the course of the underlying litigation described herein.

## III.    THE INSURANCE POLICY

6.    National Union issued to Bancroft Management and Professional Liability Insurance Policy No. 02-842-99-20 for the policy period 7-31-2011 to 7-31-2012 ["Policy"].  A true and correct copy of the relevant provisions of the Policy is attached hereto as Exhibit A.

7.    The Policy provides various types of coverage; however, relevant to this matter is the Insurance Company Liability Section ["ICL"].  In part, the ICL states that:

## 1. INSURING AGREEMENT

This policy shall pay the **Loss** of each and every **Insured** arising from a **Claim** first made against such **Insured** during the **Policy Period** or **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act** of the **Insured** in the rendering of or failure to render **Professional Services**. <u>The **Insurer** shall, in accordance with Clause 4 of this Coverage Section, advance **Defense Costs** of such **Claim** prior to its final disposition</u> (emphasis added).

## 2. DEFINITIONS

(a) **"Claim"** means:

. . .

 (2) A civil, administrative or arbitration proceeding for monetary relief which is commenced by:

  (i) Service of a complaint or similar pleading;

. . .

(c) **"Insured"** means:

 (i) any **Individual Insured**; and

 (ii) the **Company**.[1]

(d) **"Loss"** means . . . any **Defense Costs**;

. . .

(e) **"Professional Services"** means services rendered or required to be rendered solely in the conduct of the **Insured's** claims handling and adjusting, risk management, safety engineering, safety inspections and loss control operations, salvage operations, recovery subrogation services, premium financing operations, or actuarial consulting services.

(f) **"Wrongful Act"** means:

 (1) With respect to **Directors or Officers and Employees**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Insureds** in their respective capacities as such, or any matter claimed against such **Insureds** solely by reason of their status as **Directors or Officers or Employees**;

---

[1] The term "**Company**" is elsewhere defined as "(i) the **Named Entity** [*i.e.,* Bancroft Life & Casualty ICC, Ltd., the entity listed in Item 1 of the Declarations] [or] (ii) any **Subsidiary** thereof . . . ."

(2)   With respect to the **Company** any actual or alleged breach of duty, neglect, error, misstatement, omission or act by the **Company**.

. . .

## 4. DEFENSE COSTS, SETTLEMENTS AND JUDGMENTS (INCLUDING ADVANCEMENT OF DEFENSE COSTS)

(1)  The **Insurer** does not assume any duty to defend.  The **Insureds** shall defend and contest any **Claim** made against them.

. . .

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 4, the **Insurer** shall advance nevertheless, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**.  Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Company**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Company** shall not be entitled under the terms and conditions of this Policy to payment of such **Loss**.

. . .

## GENERAL TERMS AND CONDITIONS

## 2. DEFINITIONS

(j)  **"Defense Costs"** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** . . . resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against the **Insureds**, but excluding any compensation of any **Individual Insured** of the **Company**.  **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

. . .

## 6. RETENTION CLAUSE

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 3 of the Declarations, such Retention amount to be borne by the **Company** and/or the **Insureds** and shall remain uninsured, with regard to: (i) all **Loss** under the . . . ICL Coverage Section . . . .

. . .

4

**7. NOTICE/CLAIM REPORTING PROVISIONS**

. . .

**A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by an Insured, by the Company on behalf of any Insured, or by the Insurer, whichever comes first.**

(a)    The **Company** or the **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of any Claim made against the **Insured** . . . as soon as practical and either:

(1)   any time during the **Policy Period** or during the **Discovery Period** (if applicable); . . ..

. . .

**Endorsement No. 12**

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

. . .

**D.  ICL COVERAGE SECTION AMENDED**

The ICL Coverage Section is amended as follows:

1.    Paragraph (e) of Clause 2. **DEFINITIONS** is amended to include the following at the end thereof:

**Professional Services** shall also mean services rendered or required to be rendered by the **Insured** in the formation, consultation, administration, or operation of a captive Insurer and/or **Cell Captive Insurer**.

The ICL has limits of liability for all Loss of $2,000,000 with a $150,000 self-insured retention.

8.       After the expiration of the Policy period, Bancroft paid National Union hundreds of thousands of dollars in additional premiums for extensions of the coverage for successive periods.

**IV.    THE CLAIM**

9.       On July 5, 2011, Bancroft was sued by two of its certificate holders, TMC Financial, LLC and Family Wealth Advisors, LLC [collectively "the Certificate Holders"] in the

Circuit Court for Fairfax County, Virginia, in Case Number 2011-09856, *TMC Financial, LLC v. Bancroft Life & Casualty ICC, Ltd., et al.* [the "Fairfax Litigation"]. In the Complaint, the Certificate Holders alleged, *inter alia*, that Bancroft had breached an insurance contract with them by failing to pay covered insurance claims, that Bancroft and one of its directors, Bradley Barros, had fraudulently induced the Certificate Holders into joining Bancroft's group insurance program and paying premiums, that Bancroft, Barros, and Bancroft's third-party administrator had conspired to willfully and maliciously injure the certificate holders in their business in violation of Virginia Code §§ 18.2-499, and -500, and that Bancroft and Barros had violated section 18.2-217 of the Virginia Code.

10.     On or about August 15, 2011, Bancroft filed a lawsuit in the United States District Court for the Eastern District of Virginia against the two Certificate Holders that had previously sued Bancroft in the Fairfax Litigation in the case captioned *Bancroft Life & Casualty ICC, Ltd. v. TMC Financial, LLC, et al.*, Case No. 1:11-cv-903-TSE/TRJ [the "Federal Litigation"]. As a result of the Federal Litigation, the Fairfax Litigation was stayed on December 13, 2011, and the Certificate Holders filed an Answer, Counterclaim and Third-Party Complaint against, *inter alia*, Bancroft and Barros in the Federal Litigation.

11.     The Answer, Counterclaim and Third-Party Complaint filed by the Certificate Holders in the Federal Litigation alleged, *inter alia*, not only the claims previously asserted in the Fairfax Litigation against Bancroft and Barros, but also several additional claims, including breach of fiduciary duty, a demand for an accounting, a claim for a declaratory judgment, a demand for a constructive trust, a demand for an unauthorized insurer's bond, a claim for conversion, and a claim alleging violations of Sections 59.1-68.3 and 18.2-178 of the Virginia Code.

12.     Specifically, the Certificate Holders alleged that Bancroft breached the terms and conditions of various insurance certificates that it had caused to be provided to the Certificate Holders by failing (i) to cover all of the Certificate Holders' business losses, (ii) to deal in good faith in the handling of the Certificate Holders' claims, (iii) to comply with applicable insurance laws and regulations, and (iv) to reasonably adjust and settle the Certificate Holders' business risk claims.   The Certificate Holders also alleged that Bancroft and Barros made various misrepresentations regarding (i) the return of premium sections contained in the group master policy, (ii) the scope of coverage provided by said policy, and (iii) the corporate structure of Bancroft.

13.     Bancroft, in accordance with the terms and conditions of the Policy, notified National Union of the Fairfax Litigation and the Federal Litigation and requested that National Union, as quoted above, "advance Defense Costs" incurred by Bancroft and Barros in their defense of the claims asserted against them by the Certificate Holders.

14.     Although Bancroft notified National Union of the Fairfax Litigation and the Federal Litigation in August 2011, National Union did not advise Bancroft of its coverage position until January 2012.  In said correspondence National Union stated that:

(i)     "Our preliminary review is that the Insurance Coverage Liability Coverage ["ICL Coverage"] is available to you under the Policy, subject to our continuing analysis and the reservations of rights contained herein."

(ii)    Coverage under the ICL Coverage Section includes Defense Costs.

(iii)   Defense Costs incurred after August 19, 2011, will be considered Loss under the Policy and will erode the retention.

(v)     It is agreed that Thompson Hine LLP can represent BLC in the Underlying Lawsuit.

15.     Bancroft, after first paying its self-insured retention of $150,000 for reasonable and necessary fees and expenses incurred by it and Barros in the defense of the Underlying

7

Lawsuit, submitted its initial claim for reimbursement to National Union in December 2012. From December 2012 through the filing of this lawsuit, however, National Union has failed to reimburse Bancroft any monies for any Defense Costs incurred by it in the Underlying Lawsuit.

16.     During the course of the Federal Litigation, counsel for National Union repeatedly requested updates on the status of the case and copies of the pleadings, motions, deposition transcripts, and other relevant papers filed in the case.

17.     Bancroft's litigation counsel timely complied with each of the requests from counsel for National Union and supplied all requested materials.  Bancroft's litigation counsel also provided counsel for National Union with periodic case status updates and insights into Bancroft's planned actions in the litigation.  At no point did counsel for National Union express any disagreement with the actions taken by Bancroft's litigation counsel or with Bancroft's planned course of action in the litigation.

18.     Counsel for National Union also attended a mediation held at the federal courthouse in Alexandria under the auspices of a United States Magistrate Judge Ivan Davis in November 2012.  During that mediation session, counsel for National Union again expressed his agreement with all steps taken by Bancroft in the litigation to date and Bancroft's planned future activities in the litigation.

19.     When Bancroft's litigation counsel expressly raised the issue of a lack of payment of the defense costs with counsel for National Union, such inquiries were met with a litany of excuses, including that the analysts handling the claims had changed.  National Union's counsel expressly stated, however, that National Union would be sending a payment for the legal fees submitted by Bancroft's litigation counsel.  Despite this assurance, no legal fees incurred by Bancroft were ever reimbursed by National Union.

20. On July 3, 2013, Bancroft secured an order granting its motion for partial summary judgment and dismissing several of the claims against Bancroft and Barros, including a portion of the claim for breach of fiduciary duty, the claim for a constructive trust, and several of the Certificate Holders' statutory claims.

21. Following a bench trial before the Honorable T.S. Ellis, III, Bancroft and Barros obtained a judgment in their favor and against the Certificate Holders on all counts, including the Certificate Holders' remaining counterclaims for breach of contract, fraud, statutory conspiracy, and breach of fiduciary duty. Nevertheless, National Union continues, in bad faith, to refuse to reimburse Bancroft for any of its Defense Costs and has yet to pay a single penny to Bancroft.

22. National Union's conduct constitutes a violation of the Virginia Unfair Insurance Practices Act, Virginia Code § 38.2-510.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

23. Bancroft incorporates by reference the averments set forth in paragraphs 1-22, above, as if fully set forth herein.

24. Under the terms and conditions of the Policy, National Union was contractually obligated to advance Defense Costs to Bancroft with respect to the Fairfax Litigation and the Federal Litigation. National Union, however, has failed to reimburse Bancroft for any Defense Costs incurred by it with respect to the Fairfax Litigation or the Federal Litigation despite its admission in January 2012 that it was obligated under the terms and conditions of the Policy to pay said Defense Costs.

25. Bancroft has complied with all conditions precedent with respect to coverage for Defense Costs under the terms and conditions of the Policy.

26. By failing to reimburse Bancroft for its Defense Costs in the Underlying Lawsuit, National Union has breached its contract with Bancroft and, as a result of said breach of contract, Bancroft has sustained compensatory damages in an amount in excess of $1.5 million, as well as incidental and consequential damages.

27. National Union's breach of the Policy and failure to pay Defense Costs was in bad faith such that Bancroft is entitled to an award of its reasonable attorney's fees and costs under Virginia Code § 38.2-209.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

28. Bancroft incorporates by reference the averments set forth in paragraphs 1-22 above, as if fully set forth herein.

29. In violation of the terms and conditions of the Policy, National Union has refused to pay Defense Costs incurred by Bancroft in its defense of the Fairfax Litigation and the Federal Litigation.

30. An actionable controversy of a justiciable nature exists between Bancroft on the one hand and National Union on the other concerning National Union's contractual obligations under the terms and conditions of the Policy.

31. National Union's refusal to pay Defense Costs under the Policy was in bad faith such that Bancroft is entitled to an award of its reasonable attorney's fees and costs under Virginia Code § 38.2-209.

32. Bancroft seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, as to National Union's obligations under the terms and conditions of the Policy.

WHEREFORE, Plaintiff Bancroft Life and Casualty, ICC, Ltd. demands judgment as follows:

(i)     compensatory damages in excess of $75,000, exclusive of interest and costs, and in an amount to be determined at trial;

(ii)    consequential and incidental damages in an amount to be determined at trial;

(iii)   punitive damages in an amount to be determined at trial;

(v)     an award of the costs, expenses, and reasonable attorney's fees incurred by Bancroft in this action;

(iv)    all applicable pre- and post-judgment interest; and

(vi)    any and all such other relief as this Court deems just and equitable and to which Bancroft may be entitled.

Dated:  March 20, 2014.

**BANCROFT LIFE & CASUALTY ICC, LTD.,**
**By Counsel**

Grady C. Frank, Jr. (VSB 14742)
Kaplan Voekler Cunningham & Frank, PLC
439 N. Lee Street
Alexandria, VA. 22314
T:  571-527-1301
F: 571-527-1319
Email: gfrank@kv-legal.com
Counsel for Plaintiff

**Of Counsel:**

David A. Freedman
Andrew H. Marks
Coffey Burlington P.L.
2699 South Bayshore Drive
Miami, FL 33133

T: 305-858-2900
F: 305-858-5261

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served with initial process herein.

Grady C. Frank, Jr.